1

2

3

4          UNITED STATES DISTRICT COURT

5          DISTRICT OF NEVADA

6                  * * *

7   Nathan Williams,                          Case No. 2:17-cv-01612-RFB-DJA

8                          Plaintiff,                    ORDER

9          v.

10  Sgt. Allen et al,

11                         Defendants.

12

## I.      INTRODUCTION

Before the Court are Defendant Allen's Motion for Summary Judgment (ECF No. 26) and Plaintiff's Motion to Extend Time to Respond (ECF No. 35). The Court denies the Motion for Summary Judgment and grants the Motion to Extend Time, *nunc pro tunc*.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed the complaint and Application to Proceed *In Forma Pauperis* on June 8. 2017. ECF No. 1. The Court screened the complaint on May 18, 2018 and allowed Count I and a portion of Count II against Defendant Rodarte to proceed. ECF No. 7. The Court dismissed the due process allegations of Count II as well as the supervisory liability allegations of Count III without prejudice with leave to amend. Id. Defendants Gentry and Dressen were dismissed without prejudice. Id. Plaintiff did not file an amended complaint.

The case was stayed for ninety days pending the outcome of an Inmate Early Mediation Conference. ECF Nos. 9, 11. The conference was held on September 21, 2018 and no settlement was reached. ECF No. 12.

The instant motion for summary judgment was filed by Defendant Allen on April 8, 2019.

1    ECF No. 26. Plaintiff responded on May 2, 2019 and Defendant replied on May 16, 2019. ECF

2    Nos. 36, 38. A hearing on the motion was held on January 14, 2020. ECF No. 44.

3         **III.    FACTUAL BACKGROUND**

4              **a.  Undisputed Facts**

5         On April 26, 2016 at the Southern Desert Correctional Center, Defendant Rodarte was

6    conducting a search of Plaintiff's bunk in cell B-36 when he claimed to have cut his finger on a

7    razor. Defendant Rodarte notified Defendant Allen that he had cut his finger, and Defendant Allen

8    also conducted a search of the cell. Allen never saw how or where Rodarte actually cut his finger.

9         Defendant Allen instructed Plaintiff and his cellmate to exit the cell after his conversation

10   with Rodarte. Allen then questioned Plaintiff about the razor. Defendant Allen told Plaintiff he

11   was directing that Plaintiff have his blood drawn.

12        Defendant Allen handcuffed Plaintiff.

13        Defendant Allen contacted shift command and shift command ordered Defendant to take

14   Plaintiff back to his cell. No razor blade was ever found in the cell.

15             **b.  Disputed Facts**

16        The parties have different characterizations of the circumstances and the force deployed by

17   Defendant and why.

18        According to Plaintiff, Defendant Allen aggressively questioned Plaintiff about how

19   Defendant Rodarte cut his finger while searching Plaintiff's cell, and Plaintiff asked for a grievance

20   in response to this aggressive questioning. Defendant Allen then physically retaliated against

21   Plaintiff. Plaintiff states he asked for a grievance when Defendant stated he would "bust up"

22   Plaintiff's cell, then Defendant Allen began to curse and scream at Plaintiff as Plaintiff repeatedly

23   asked for a grievance. ECF No. 36 at 9-10. Plaintiff states he was in fear for his life and began to

24   back away from Defendant with his hands raised "in a gesture of surrender" and stated to

25   Defendant that he "did not want to fight." Id. at 10. Plaintiff states another officer (Officer Cox)

26   arrived and asked Plaintiff to turn and face the wall, which Plaintiff did. Id. Plaintiff states

27   Defendant Allen resumed cursing at him, told him to put his hands behind his back, and while

28   gripping Plaintiff's arm, walked Plaintiff away from the area to the "rotunda near the officers'

2

station where there were no cameras and away from Officer Cox." <u>Id.</u> Plaintiff told Defendant he did not need to grip his arm that way, and states Defendant then pulled his arm back further. <u>Id.</u> at 10-11. Plaintiff states he directed Defendant to stop retaliating against him for requesting a grievance, and that Defendant stated Plaintiff asked for the grievance "in front of all the other inmates." Plaintiff states Defendant then "mashed his knee into the back of Plaintiff's right leg" dislocating Plaintiff's hip. <u>Id.</u> at 11. Plaintiff states Defendant continued to physically assault him until Officer Ward yelled at Defendant Allen from the officers' station and Officer Cox appeared from around the corner. <u>Id.</u> Plaintiff also asserts that after Plaintiff requested a grievance, Defendant Allen told Plaintiff that though Defendant was initially going to return Plaintiff back to his cell, he would now require Plaintiff to take a blood draw. Plaintiff states that although Defendant was ordered to return Plaintiff to his cell, he did not do so but instead sent Plaintiff to have blood drawn. <u>Id.</u> at 3.

According to Defendant, after being notified by Defendant Rodarte that Rodarte had cut his finger while conducting a search of the bottom bunk in Plaintiff's cell, Defendant Allen asked both Plaintiff and his cellmate to exit the cell, advised them they would need to have blood drawn, and inquired as to who lived on the bottom bunk. ECF No. 26 at 2. Plaintiff confirmed he did, "balled up his fists," <u>id.</u> at 11, and stated, "No one sliced their fucking finger in my cell," after which Defendant instructed Plaintiff to face the wall and Plaintiff did not comply, but yelled at Defendant, "You are not going to charge me with a damn thing. Fuck you. I'm not going anywhere," <u>id.</u> at 2. Defendant then placed Plaintiff in handcuffs, notified shift command of the situation and was told to place Plaintiff back in his cell. <u>Id.</u>

The parties also dispute whether there was a razor blade in Plaintiff's bunk. Plaintiff states there was no razor blade in his cell.

The parties also dispute whether Plaintiff was in his cell at the time Defendant Rodarte's finger was cut. According to Defendant, Plaintiff was in his cell, as evidenced by Medical Records Progress notes from April 29, 2016 that state, "inmate was in the room when officer involved in possible blood exposure—razor cut." ECF No. 26 at 12 (citing Ex. C at 7, ECF No. 28) (filed under seal). According to Plaintiff, he was eating dinner at the time his cell was searched, as evidenced

3

by Defendant Rodarte's statement in his Notice of Charges indicating as such, and by the fact that inmates are rarely allowed to watch while searches of their cell are conducted. ECF No. 36 at 11-12.

The parties further dispute the extent of Plaintiff's alleged harm.

According to Plaintiff, Defendant's excessive force against him resulted in a dislocated hip. According to Defendant, there is no evidence that Plaintiff suffered any injury, including a dislocated hip.

The parties also dispute whether video footage from the date of the incident was intentionally destroyed. According to Plaintiff, there were at least three cameras mounted on the unit on April 29, 2016. Ex. A, ECF No. 36 at 2. Defendant and prison staff destroyed footage captured by these cameras. Id. at 12. According to Defendant, video surveillance was not destroyed. No video surveillance dating back to April 29, 2016 exists and so surveillance video cannot be produced. ECF No. 38 at 8.

The parties additionally dispute whether Plaintiff filed a Second-Level grievance regarding the incident in question and therefore whether Plaintiff exhausted his administrative remedies.

Plaintiff states he attempted to file a Second-Level grievance which prompted a response indicating his First-Level grievance had been improperly filed. Plaintiff states he has been stymied by prison officials from using the grievance process. According to Defendant, Plaintiff did not file a Second-Level grievance and did not receive a response to a Second-Level grievance, and therefore did not exhaust his administrative remedies. Plaintiff has not been prohibited from utilizing the grievance process.

The parties also dispute whether Defendant took "retaliatory actions" against Plaintiff on April 30, 2016, June 10, 2016, and September 20, 2016.

According to Plaintiff, Defendant "intimidated and antagonized" and "assaulted" Plaintiff on these dates. ECF No. 36 at 14. See also Ex. A at 3, ECF No. 36.  According to Defendant, he does not recall having any contact with Plaintiff on those dates.

**IV.   LEGAL STANDARD**

**A.  Motion for Summary Judgment**

4

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "To survive summary judgment, a party does not necessary have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

"The court need consider only the cited materials, but it may consider other materials in the record." Id. at § (c)(3).

### B.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit."

1   Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014).

2         In deciding whether officers are entitled to qualified immunity, courts consider, taking the

3   facts in the light most favorable to the nonmoving party, whether (1) the facts show that the

4   officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly

5   established at the time.  Id.

6         Under the second prong, courts "consider whether a reasonable officer would have had fair

7   notice that the action was unlawful."  Id. at 1125 (internal quotation marks omitted).  "This requires

8   two separate determinations: (1) whether the law governing the conduct at issue was clearly

9   established and (2) whether the facts as alleged could support a reasonable belief that the conduct

10  in question conformed to the established law."  Green v. City & Cty. of San Francisco, 751 F.3d

11  1039, 1052 (9th Cir. 2014).  While a case directly on point is not required in order for a right to be

12  clearly established, "existing precedent must have placed the statutory or constitutional question

13  beyond debate."  Ashcroft v. al–Kidd, 131 S. Ct. 2074, 2083 (2011).  Further, the right must be

14  defined at "the appropriate level of generality ... [the court] must not allow an overly generalized

15  or excessively specific construction of the right to guide [its] analysis."  Cunningham v. Gates,

16  229 F.3d 1271, 1288 (9th Cir. 2000); see also al–Kidd, 131 S. Ct. at 2084.  The plaintiff bears the

17  burden of proving that the right was clearly established.  Id. at 1125.

18        In deciding a claim of qualified immunity where a genuine dispute of material fact exists,

19  the court accepts the version asserted by the non-moving party.  See Bryan v. MacPherson, 630

20  F.3d 805, 823 (9th Cir. 2010).

21

22        **V.    DISCUSSION**

23        **A.  Exhaustion**

24        The Court begins its analysis of the motion with the argument as to exhaustion.

25        The Prison Litigation Reform Act (PLRA) requires that before bringing a § 1983 action, a

26  prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion

27  must be proper, meaning that the prisoner must proceed through each step of the prison's grievance

28  procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548

                                                6

U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly exhaust under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007).

Nevada Department of Corrections Administrative Regulation (AR) 740 sets forth the grievance procedure applicable to Nevada inmates. There are three levels of grievances within AR 740: an informal grievance (AR 740.05), a First–Level grievance (AR 740.06), and a Second–Level grievance (AR 740.07). Ex. E at 5-10, ECF No. 26-5. Inmates who are dissatisfied with a decision at a lower level may appeal the decision by filing a higher–level grievance. Once a decision on the merits has been rendered on a Second–Level grievance, the NDOC administrative grievance process is considered exhausted by NDOC. AR 740 also provides the time frame in which a grievance must be filed and provides that an informal grievance must be filed within six months for issues involving personal injury, medical claims, or any other tort claims including civil rights claims.

In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, the Ninth Circuit has held that a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id. See also Jones, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

"Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). Where an exhaustion defense is raised in a motion for summary judgment, disputed questions of fact should be resolved by the judge rather than the jury. Id. at 1170–71. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171. "[T]he defendant in a PLRA case must plead and prove nonexhaustion as an

affirmative defense." Id.

A prisoner need not exhaust remedies if they are not 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1855 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). The Supreme Court has identified three (nonexhaustive) circumstances in which an administrative procedure is deemed unavailable. See id. at 1859-60. First, if "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. For example, if "administrative officials have apparent authority, but decline ever to exercise it." Id. Second, if an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." Id. "In this situation some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Third, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Defendant argues Plaintiff failed to exhaust his administrative remedies because he did not file a Second-Level grievance after he received a response to his initial and First-Level grievances. ECF No. 26 at 8-9. Plaintiff counters in opposition that he tried to exhaust but was prevented from doing so. ECF No. 36 at 5-6. Plaintiff states he waited "over ninety days" to receive a response to his First-Level grievance despite only being required to wait sixty. Id. at 5. Plaintiff states he did not receive a response to his First-Level grievance until after he submitted his Second-Level grievance on September 6, 2016 (Ex. B at 4). Id. Plaintiff states that though he was not required to re-submit his Second-Level grievance, he attempted to do so, and prison officials refused to provide him the paperwork and "administrative claim forms." Id. Plaintiff argues that under the Ninth Circuit standard in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), he was not required to exhaust unavailable remedies. Id. at 5-6. Plaintiff further cites Ross v. Blake, 136 S. Ct. 1850, 1855 (2016) to maintain that prison officials "went out of their way to 'thwart'" him from taking advantage of the grievance process, thereby rendering it impossible for Plaintiff to obtain administrative relief, and rendering administrative remedies "unavailable." Id. at 6.

Plaintiff further asserts that the grievance history provided by Defendant is incomplete, id. at 6-7, and that the grievance timeframes were suspended once the matter was referred to the Office of Inspector General, and therefore he was not required to file additional grievances (though he did), id. at 7. Plaintiff further argues that the language of AR 740.06—which details the required paperwork to be included with a First-Level grievance—does not explicitly contemplate prior grievance documentation and responses as included within "additional relevant documentation" that "should be attached at this level." Id. at 7. See also ECF No. 26-5 at 8 ("At [the first level] the inmate shall provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect. This should include a list of persons, if any, who have relevant knowledge or information supporting the claim. Any additional relevant documentation should be attached at this level."). Therefore, Plaintiff argues the prison's basis for rejecting his grievance as not having attached prior grievance documentation and any response is invalid. Id. Plaintiff provides additional documentation in the form of an Inmate Request Form dated September 2, 2016, in which he stated he had not received timely responses to his grievances and was not being permitted to exhaust his administrative remedies. Ex. F at 4, ECF No. 36.

In reply, Defendant counters that the Second-Level grievance (Plaintiff's Ex. B at 4) Plaintiff filed on September 6, 2016 is illegible and does not therefore indicate whether it was submitted, but that even if Plaintiff did submit it, "he clearly did not receive a response," and therefore did not complete the grievance process as mandated by AR 740. ECF No. 38 at 5. Defendant further argues that Plaintiff was not prevented from exhausting his administrative remedies because: 1) he was given a second level grievance "because he attached it to his Opposition and claimed to have filled it out;" 2) he had access to the grievance process since he submitted five subsequent grievances after the grievance in question; 3) the informal grievance (Ex. F at 1, ECF No. 36) Plaintiff attached in which he complains he is being denied Second-Level grievances does not reference grievance 2006302296 (the grievance at issue) or any other, and so cannot support the contention he was denied a Second-Level grievance with regard to grievance 2006302296; and 4) this April 2017 grievance about being denied Second-Level grievances was submitted on April 19, 2017 but Plaintiff states that he submitted his Second-Level grievance on

9

September 6, 2016. Id.

Upon review of Defendant's Exhibit E (ECF No. 26-5), which constitutes the administrative exhaustion procedures laid out by AR 740, and Defendant's Exhibits F and G (ECF Nos. 26-6, 26-7), which detail Plaintiff's Inmate Grievance History, it is clear that Plaintiff's grievance (grievance number 20063022996) against Defendant regarding the incident at issue was referred to the Office of the Inspector General for investigation at Level 1. Ex. F at 4, ECF No. 26-6; Ex. G at 2, ECF No. 26-7. AR 740.11.B dictates that "[g]rievances alleging staff misconduct will be reviewed by the Warden and if deemed appropriate will be forwarded to the Office of the Inspector General" and further, that "[t]imeframes are suspended until a disposition is received from the Inspector General's Office." ECF 26-5 at 7-8. However, Defendant does not provide any history regarding the outcome of the Office of Inspector General's investigation, and based on Plaintiff's own exhibits, it appears that Defendant has neglected to provide the full grievance history for grievance number 20063022996. Compare Ex. F at 4, ECF No. 26 and Ex. G at 2-7, ECF No. 26 with Ex. F at 3, ECF No. 36. The Court finds that Plaintiff's assertions of an incomplete grievance history are credible.

Plaintiff's exhibits illustrate that Plaintiff filed another First-Level grievance regarding grievance number 2006302296 that was signed by Plaintiff on November 1, 2016, and by the Grievance Coordinator on December 12, 2016, but which did not include a response. Ex. F at 3, ECF No. 36. Moreover, Plaintiff's exhibits include references to grievances that are not included in the Inmate Grievance History provided by Defendant. Compare Ex. E at 2, 4, ECF No. 36 (including grievance numbers 20063047583/2017 and 2006303397/2016) with Ex. F at 2-6, ECF No. 26 (excluding grievance numbers 20063047583/2017 and 2006303397/2016). This additional First-Level grievance filed in grievance number 20063022996 is not included in Defendant's exhibits. See Ex. F at 4, Ex. G at 2-7, ECF No. 26. Within this additional First-Level grievance under log number 2006302296, Plaintiff states that he never received a response to his initial First-Level grievance and could not therefore provide "'previously submitted grievance documents and responses.'" Ex. F at 3, ECF No. 36. The Court finds Plaintiff's assertion of the relevant facts to be more credible than that of Defendants.

10

1    Plaintiff's exhibits also include a memorandum received from the SDCC Grievance
2    Coordinator dated September 29, 2016, regarding grievance number 20063033997, which rejects
3    that grievance, stating "AR 740.06.2 states you must also attach any and (all) relevant
4    documentation (to your grievance submission). When resubmitting grievances you must include
5    all previously submitted grievance documents and responses received, relative to the specific Issue
6    ID number. You must resubmit under the log #20063032206." Ex. E at 4, ECF No. 26. The
7    grievance rejected by this memorandum is one of the grievances excluded from Defendant's
8    exhibit detailing the Inmate Grievance History. Defendant's failure to include in its exhibits this
9    subsequent First-Level grievance filed under log number 2006302296, as well as the memorandum
10   from which Plaintiff appears to be quoting when he references, "previously submitted grievance
11   documents and responses," in addition to the Inmate Request Form from September 2016 in which
12   Plaintiff complains he has received no response to his grievances, casts doubt on Defendant's
13   argument that Plaintiff did not file, or attempt to file, a Second-Level grievance. The Court finds
14   that Plaintiff did file this Second-Level grievance.

15   Moreover, it is notable that in response to the memorandum rejecting grievance number
16   20063033997, which, again, is not included or referenced in Defendant's exhibits, Plaintiff
17   responds using log number 20063022996, suggesting that the memorandum was referencing the
18   grievance related to the incident at issue in this case.

19   Assuming that the memorandum references grievance 20063022996 despite the
20   differentiating log number, the Court then considers whether, in the first instance, Plaintiff's First-
21   Level grievance addressed by the memorandum was appropriately denied, and if so, whether
22   Plaintiff was indeed provided "all previously submitted grievance documents and responses" such
23   that he could comply with the directive to attach these documents to a subsequent First-Level
24   grievance. AR 740.06.2 states with regard to First Level grievances that:

25
26       At this level the inmate shall provide a signed, sworn declaration of facts that form
         the basis for a claim that the informal response is incorrect. This should include a
27       list of persons, if any who have relevant knowledge or information supporting the
         claim. Any additional relevant documentation should be attached at this level.
28

11

1

2   Therefore, the memorandum must have considered "previously submitted grievance documents

3   and responses" to be "relevant documentation" that should be attached to the First-Level

4   grievance. Plaintiff argues that this regulation does not explicitly advise that prior grievance

5   documentation must be included and that, as the inmate has already submitted these grievances to

6   the prison "and the response was issued by the prison and is maintained in its system," it is not

7   reasonable to infer that AR 740.06.2 requires this documentation. ECF No. 36 at 7 (citing McNair

8   v. Berg, No. 3:16–cv–00487–MMD–WGC, 2018 WL 2943439, at *4 (D. Nev. June 12, 2018)).

9   The Court agrees. The language in AR 740.06.2 says nothing about "previously submitted

10  grievance documents and responses" and it makes very little sense to interpret it that way, as the

11  administrative staff who manage prisoner grievances are very likely to have access to that

12  documentation already. Moreover, as noted, the intent of the exhaustion requirement is to place

13  the facility on notice of issues raised by an inmate and not erect esoteric and irrelevant procedural

14  requirements. Accordingly, the Court therefore finds that the First-Level grievance denied by the

15  memorandum—which the Court is inclined to believe is grievance number 20063022996 based on

16  the circumstantial evidence provided and despite the differentiating log number—was

17  inappropriately denied, and, regardless, the facility was clearly on notice of Plaintiff's issues raised

18  in his grievances.

19  Moreover, even if AR 740.06.2 were read to require the submission of "previously

20  submitted grievance documents and responses," Defendant has failed to prove here that Plaintiff

21  was ever given a disposition from the Office of the Inspector General in response to his initial

22  First-Level grievance under log number 20063022996, initially reported in May 2016. Defendant

23  has provided no evidence detailing whether the Inspector General completed the investigation or

24  whether Plaintiff received a disposition. There is therefore no way that Plaintiff could ever comply

25  with AR 740.062 as interpreted by prison officials, or indeed file a Second-Level grievance,

26  essentially making it impossible for him to exhaust his administrative remedies.

27  The burden is on Defendant to plead and prove nonexhaustion as an affirmative defense,

28  and Defendant has failed to include a complete grievance history and to provide any evidence

12

indicating whether Plaintiff received a disposition from the Office of Inspector General regarding his First-Level grievance. The Court also finds credible Plaintiff's assertion that he submitted the equivalent of a Second Level Grievance to Defendants. Accordingly, the Court finds that this administrative remedy was not "available" to Plaintiff, and he is not therefore required to exhaust, or, alternatively, that Plaintiff did exhaust but those forms were lost by the facility. Therefore, summary judgment in favor of Defendant with regard to exhaustion is denied, and the Court now turns to the merits.

### B.  First Amendment Retaliation

Defendant seeks summary judgment on Plaintiff's First Amendment retaliation claim.

In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere *threat* of harm can be an adverse action." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes, 408 F.3d at 567–68. The Plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A Plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

Defendant states he did not take any adverse action against Plaintiff or because of Plaintiff's protected conduct. ECF No. 26 at 14. In the first instance, Defendant argues he did not

13

assault Plaintiff, and therefore the alleged assault could not be in retaliation for Plaintiff's multiple requests from Defendant for a grievance. Id. Defendant argues that the extent of force deployed against Plaintiff was not "because of" Plaintiff's grievance requests but because of the alleged discovery of the razor and regulation requirements stemming from that event. Id. Defendant further argues that Plaintiff has provided no evidence of retaliation in support of this claim. Id. Defendant also states that simply because Plaintiff asked for the grievance in the middle of Defendant's search does not mean that Defendant retaliated against Plaintiff. Defendant asserts that handcuffing Plaintiff was in response to Plaintiff's noncompliance and not "because of" the request for a grievance.

Plaintiff counters that Defendant retaliated against him because he asked for a grievance "in front of all the other inmates," by forcing him to take a blood draw under false pretenses, cuffing and assaulting him, refusing to return his property, and intimidating and antagonizing him on multiple occasions. ECF No. 36 at 13-14.

There is a genuine dispute of material fact as to whether or not the incident occurred according to Plaintiff or Defendant's version of events, and therefore whether Defendant retaliated against Plaintiff. As non-movant, Plaintiff has met his burden through evidence in the form of his declaration, which refutes Defendant's version of events and asserts that Defendant retaliated against him for asking for a grievance by, *inter alia*, stating, "At first you were just going back in your cell but now you're going to take a blood draw." The Court finds that Plaintiff has asserted disputed facts that he was physically assaulted resulting in hip dislocation and forced to have his blood drawn unnecessarily because he requested a grievance form.

### C. Eight Amendment Excessive Force

Defendant also moves for summary judgment on Plaintiff's Eighth Amendment excessive force claim.

The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case, prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations and quotation marks omitted). See

also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2) the need for the use of force; (3) the relationship between the need and the level of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force used. Furnace, 705 F.3d at 1028-29 (citation and quotation marks omitted).

The extent of the injury suffered by the inmate or the "objective component" of the Eighth Amendment analysis, is "contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (citation omitted). "In the excessive force context . . . . [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9.

There are genuine issues of disputed material facts as to whether or not the force Defendant deployed against Plaintiff was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. As non-movant, Plaintiff has met his burden through his declaration, which refutes Defendant's characterization of the events as evidenced by Defendant Allen's declaration. With regard to the extent of injury, Plaintiff's version of events indicates he suffered pain and a dislocated hip. The Court further finds that the forced blood draw without justification, according to Plaintiff, also constitutes excessive force as it represents an unwarranted physical and painful intrusion. Regarding the need for use of force, there was no need for force because there was no need to maintain or restore discipline given Plaintiff's compliance with Defendant's orders and the lack of evidence that there was a razor blade on either Plaintiff's person or in his cell. Thus, Plaintiff's version of events indicates he was first handcuffed and then assaulted in various ways without justification. Considering the facts in the light most favorable to Plaintiff as the nonmoving party, the facts as described by Plaintiff could only be characterized as "malicious and sadistically" intended to cause harm.

Additionally, the Court finds that there are genuine issues of disputed fact as to the extent of any injury suffered by the Plaintiff. The lack of documentation of the injury is not dispositive

15

of this point. That is particularly true in this case where it appears that the facility has "lost" several other documents relevant to this litigation. The Court thus accepts for purposes of this motion Plaintiff's assertion that he suffered a significant and severe hip injury as a result of Defendant's conduct. This provides a further basis to deny the motion and qualified immunity.

### D.  Qualified Immunity

The Court next considers Defendant's contention that he has qualified immunity as to both Plaintiff's First and Eighth Amendment claims, because the law was not clearly established that he could not act according to "established procedures," as he claims to have done. ECF No. 26 at 14-15; ECF No. 38 at 11-12.

Beginning with the First Amendment claim, in deciding whether Defendant may assert qualified immunity, since there exists a genuine dispute of material fact, the Court accepts Plaintiff's version of events as the non-moving party. Plaintiff has met the first prong of qualified immunity by showing that Defendant's conduct violated a constitutional right. Based on Plaintiff's assertions, Defendant violated his First Amendment right by taking action against Plaintiff in the form of physical aggression that did not reasonably advance a legitimate correctional goal, because Plaintiff asked for an emergency grievance, which is a protected activity, thereby chilling Plaintiff's exercise of his First Amendment rights. Specifically, as noted, Defendant allegedly inflicted a serious hip injury on Plaintiff and forced him to suffer an unnecessary blood draw simply because Plaintiff requested a grievance.  As for the second prong of the qualified immunity inquiry, Plaintiff has also met his burden in showing that Defendant violated a clearly established right. The right to be free from retaliation for exercising First Amendment rights has been clearly established for decades. See Pratt v. Rowland, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's First Amendment claim.

The same is true for Plaintiff's Eighth Amendment claim. Again, as there are several genuine issues of disputed material fact, the Court accepts Plaintiff's version of events as the non-moving party. Plaintiff has met the first prong of qualified immunity by showing that Defendant's

1   alleged conduct violated a constitutional right. He has asserted that Defendant inflicted an

2   unwarranted severe hip injury on him and forced him to suffer an unnecessary physical and painful

3   intrusion of his body by means of a blood draw. As for the second prong of the qualified immunity

4   inquiry, Plaintiff has also met his burden in showing that Defendant violated a clearly established

5   right. Since <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992),  "the law regarding a prison guard's use

6   of excessive force was clearly established[.]" <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1183 (9th Cir.

7   2003). The "unnecessary and wanton infliction of pain" constituted excessive force under the

8   Eighth Amendment by this time. <u>Id.</u> Accordingly, Defendant is not entitled to qualified immunity

9   on this claim.

10          Therefore, summary judgment in favor of Defendant is denied.

11

12   **VI.    CONCLUSION**

13          **IT IS THEREFORE ORDERED** that Defendant Allen's Motion for Summary Judgment

14   (ECF No. 26) is DENIED.

15          **IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Time to Respond (ECF

16   No. 35) is GRANTED, *nunc pro tunc*.

17

18          DATED: May 29, 2020.

19

20          _____

            **RICHARD F. BOULWARE, II**

21          **UNITED STATES DISTRICT JUDGE**

22

23

24

25

26

27

28

17